UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

PETROLEUM ENHANCER, LLC,
a Michigan limited liability company,

            Plaintiff/Counter-Defendant,

v.

LESTER R. WOODWARD,
            Defendant,
and

POLAR MOLECULAR CORP.,

            Intervenor-Plaintiff,

POLAR MOLECULAR HOLDING CORP.,

            Interpleader-Plaintiff/
            Third Party/Counter-Plaintiff

                                Case Number 07-12425-BC

v.                             Hon. Thomas L. Ludington

AFFILIATED INVESTMENTS, LLC,
RICHARD SOCIA, CARL HILL, BRUCE
BECKER, A. RICHARD NELSON,

            Third Party Defendants.
_____/

In re: POLAR MOLECULAR CORP.

POLAR MOLECULAR CORP.,

            Plaintiff,

                                Civil Action No. 09-10247

v.                             Hon. Thomas L. Ludington

PETROLEUM ENHANCER, LLC.

            Defendant.
_____/

**OPINION AND ORDER GRANTING PLAINTIFF/COUNTER DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT, DISMISSING CLAIMS WITH PREJUDICE,
AND ORDERING POLAR MOLECULAR CORPORATION TO SHOW CAUSE WHY
THE REMAINING CLAIMS SHOULD NOT BE DISMISSED FOR WANT OF
PROSECUTION**

Now before the Court is a motion for summary judgment filed by Plaintiff Petroleum Enhancer, LLC, Defendant Lester R. Woodward, and Third Party Defendants Affiliated Investments, LLC, Richard Socia, Carl Hill, Bruce Becker, and A. Richard Nelson ("Petroleum Parties") [Dkt. #117 (40)] as to the claims of Polar Molecular Holding Corporation ("PMHC"). On November August 30, 2010, PMHC filed a response [Dkt. #123/124 (46/47)]. On September 10, 2010, the Petroleum Parties filed a reply [Dkt. # 127 (50)]. Generally, Petroleum contends that (1) PMHC's claims that the Petroleum Parties interfered with potential financing arrangements with IBK Capital Corporation ("IBK") is untrue; (2) that PMHC does not have standing to allege any claims arising from the alleged disclosure of confidential information and interference with potential customers belonging to Polar Molecular Corporation ("PMC"); (3) that the Petroleum Parties did not owe a fiduciary duty to PMHC and (4) even if a duty were to exist, no breach has been established; and (5) that if a breach were established, PMHC could not establish proximate cause. The Court held a hearing on Thursday, October 28, 2010. For the reasons explained hereafter, the Court will GRANT Plaintiff/Defendant/Counter-Defendant/Third Party Defendants' motion for summary judgment.

**I**

PMC is a wholly owned subsidiary of PMHC, a publicly held company. PMC is engaged in the petroleum additives business, and at one point owned thirty-nine patents, and numerous trademarks. On June 5, 2007, Petroleum Enhancer filed a complaint in this Court, assigned case

number 07-12425, against Lester Woodward ("Woodward"), an escrow agent, seeking claim and delivery of two patents collaterally assigned to secure a loan made to PMC for $600,000. Petroleum Enhancers's complaint alleged that on October 25, 2001, PMC executed a promissory note to Affiliated Investments, LLC ("Affiliated"), by which PMC promised to repay Affiliated $600,000 plus interest by January 7, 2005. In exchange, PMC granted Affiliated a continuing security interest in, inter alia, Polar's rights and interests in certain intellectual property including a patent, U.S. Patent No. 6,488,723, which PMC contends was appraised with a value of $400 million, and the DurAlt trademark name for PMC's fuel additive formulas. PMC defaulted on the loan as of January 7, 2005, but Affiliated did not seek repayment or begin an action for recovery of the collateral in 2005 or 2006.

During 2006 disagreement developed among at least two camps of business principals about PMHC's business strategy. Mark Nelson, PMHC's President, Chairman of the Board, and Chief Executive Officer, entered into negotiations with Philip Saunders, the former owner of Truck Stops of America, for a distribution contract for the sale of DurAlt fuel products. At the same time, Richard Socia, a PMHC director and the PMHC secretary, and Carl Hill, a PMHC consultant, sought an exclusive contract for a different fuel product with a another individual, Richard Archambault. As a result, animosity purportedly developed between the parties. At the January 23, 2007, board meeting, Socia and Hill attempted to "oust" Nelson from his position as Chairman, CEO, and President of PMHC by bringing a motion for his removal but were unsuccessful when the board members voted against Nelson's removal. At this same meeting, Nelson then moved for Socia's removal and the motion was accepted by the board.

Socia then suggested an idea to Bruce Becker, President of Affiliated, that they might

exercise Affiliated's right to foreclose on the defaulted loan between PMC and Affiliated. The proposal included forming a new company that would purchase the promissory note to secure the patent and intellectual property collateral. Hill, Socia, and Becker formed Petroleum Enhancer, LLC, on March 22, 2007. Socia then submitted his resignation from PMHC on April 18, 2007.

During approximately the same period of time, PMC was also considering refinancing with IBK. On December 6, 2006, William White, IBK's President, signed an engagement letter representing that IBK would "endeavour to obtain" for PMC "a private placement of up to $10.0 million of convertible preferred shares or some other acceptable financing arrangement." (Def.s' Mot. for Summ. J. Ex. D.) The engagement letter stated that the agreement would continue for six months, and could be terminated by either PMC or IBK with notice at any time. The engagement letter was returned to IBK with Mark Nelson's signature. Under the terms of the engagement letter, PMC was to provide the most up-to-date information concerning the company and its assets. Prior to the submission of the engagement letter, IBK had not performed any research or investigation of PMC's or PMHC's financial data or other information. On January 2, 2007, IBK received PMHC's Form 10-K for the fiscal year ending December 31, 2004 ("PMHC's 10-K").

Prior to January 2, 2007, IBK had not reviewed any financial reporting information of PMC or PMHC. Upon review of the financials, several "red flags" were noted by IBK staff. These red flags included the fact that PMHC's 10-K was two years old and the 10-K disclosed extensive litigation in which PMC and/or PMHC were engaged, including a matter reflecting some $40,000,000 in controversy. Additionally, the 10-K reflected that there were two changes in auditors for PMHC with Hein & Associates LLP resigning as PMHC's independent accountant on January 18, 2005 and PMHC retaining the firm of Wheeler Wasoff, P.C., effective February 10,

-4-

2005 to audit the financial statements for the year ending December 31, 2004. (Def.s' Mot. for Summ. J. Ex. E.)

After White's review of PMHC's 10-K, White shared the same concerns as those raised by IBK's staff.  Based on the review of the information disclosed in PMHC's 10-K, IBK decided it would not proceed with the financing arrangements contemplated in the December 6, 2007, engagement letter. Erik Williams of IBK first contacted  Nelson by phone to advise him of IBK's decision to terminate the arrangement because of the change in PMHC's auditors and the reported pending litigation. On January 22, 2007, White sent written confirmation of IBK's decision to terminate the engagement agreement with PMC. PMC's funds advanced with the engagement letter were returned. Upon receipt of the termination letter,  Nelson called White, and White confirmed the fact that IBK had decided not to proceed with the engagement.  White did not have another conversation with Nelson after January 2007 until approximately three weeks prior to White's deposition on July 22, 2010.  Nelson called wanting to discuss his "court situation" with White but White declined the invitation.

Nelson initially stated in his deposition that White told him that he had spoken with Socia who opposed the IBK financing proposal.  Nelson later explained his testimony, stating that he did not know the date or even the year his conversation with White occurred, but that the conversation took place long after–possibly a year after–the financing engagement agreement was terminated. Nelson stated that when he contacted White it was to request his testimony as a witness in the PMC litigation. According to Nelson,White implied during this conversation that he had been in contact with Hill and Socia, but did not specifically state he had either spoken or met with either individual. Nelson later provided a hand-written amendment to this portion of his deposition testimony that it

-5-

was his belief that Socia had spoken with IBK.

Subsequently, on or about April 26, 2007, Affiliated assigned all of its rights, title, and interest in the security agreement and note with PMC to Petroleum Enhancer for $2,000,000. Becker testified at his deposition that the decision to form a new company to purchase the PMC loan and to obtain the patents and intellectual property that was collateral for the defaulted loan was developed prior to the formation of Petroleum Enhancer, LLC. On May 8, 2007, Petroleum advised Woodward that it was the holder of the note and the security agreement and that PMC was in default of its obligations. Petroleum Enhancer demanded that Woodward release the executed assignments pursuant to the terms of the agreement. On June 5, 2007, Petroleum Enhancer filed a complaint against Woodward with this Court alleging claim and delivery, breach of contract, breach of fiduciary duty, and negligence causes of action [Dkt. # 1], and requesting that the Court order Woodward to release possession of the assignments he was holding in escrow.

On September 14, 2007, the Court required Woodward to deliver the assignments to Petroleum Enhancer, as it was uncontested that PMC was in default on payment of the promissory note. [Dkt. # 26]. At the Court's direction, Petroleum provided proposed procedures for the sale to conform with Article 9 of the Uniform Commercial Code on September 27, 2007, contemplating that the sale would occur on December 3, 2007 and that any sale proceeds greater than the amount of the unpaid debt would be returned to PMC. PMC then sought a preliminary injunction to halt the sale and also filed objections to Petroleum's proposed procedures. On October 29, 2007, the Court entered an order rejecting most of PMC's objections, but accepting PMC's objection to require more time before the sale occurred [Dkt. # 51]. The Court ordered Petroleum Enhancer not to conduct the first scheduled sale of the collateral before January 7, 2008 [Dkt. # 51].

-6-

On November 7, 2007, the Court granted PMC and PMHC's unopposed motion to intervene, *see* [Dkt. # 52], and on November 19, 2007, the PMC and PMHC filed counterclaims against Petroleum and a third-party complaint against Affiliated, Richard Socia, Carl Hill, Robert MacKenzie, A. Richard Nelson, Dolores Coy-DeJongh and Bruce Becker.  [Dkt. # 53, 54]. PMC and PMHC alleged claims of breach of fiduciary duty, tortious interference, and civil conspiracy. Generally, they alleged that Petroleum Enhancer is owned by "insiders and stockholders" of the PMC and PMHC, including Socia, Hill, and Becker.  They further allege that Petroleum Enhancer was formed for the sole purpose of purchasing Polar's debt in order to obtain the intellectual property collateral.  PMC and PMHC alleged that the named individuals were using some unidentified corporate knowledge of the companies in their ongoing attempt to acquire PMC's intellectual properties, worth approximately $400,000,000, for only $2,000,000.

In accordance with the procedures approved by the Court to obtain competitor bids for the collateral, Petroleum Enhancer advertised the sale on November 12, 13, and 19, 2007, in a national business newpaper and other relevant industry publications that the sale of the property was to take place on January 14, 2008.  Between November 12, 2007 and January 11, 2008, no correspondence was received in response to the advertisement and no one otherwise expressed interest in attending the sale.

On January 11, 2008, PMC filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Colorado.  The petition automatically stayed the sale of the collateral.  On March 6, 2008, the Court granted a stay of proceedings at the parties' request, to allow time for resolution of Petroleum Enhancer's motion to dismiss PMC's petition.  [Dkt. # 72]. The bankruptcy proceedings were eventually dismissed after PMC's counsel withdrew, citing an

ethical conflict in continuing to represent PMC.  On June 11, 2008, Petroleum Enhancer filed a motion to proceed with the foreclosure sale along with proposed procedures for the sale that largely mirrored the procedures previously considered by this Court [Dkt. # 74]. PMC again filed objections to the procedures, incorporating its prior objections by reference that the Court previously addressed [Dkt. # 77]. On July 1, 2008, the Court overruled PMC's objections and granted Petroleum Enhancer's motion to proceed with the sale of the collateral in accordance with the identified procedures filed on June 11, 2008.  [Dkt. # 79].

However, on or about August 4, 2008, PMC filed a second Chapter 11 petition in the United States Bankruptcy Court for the District of Colorado, again staying the sale of the collateral.  On October 21, 2008, PMC commenced an adversary proceeding within the bankruptcy case.  In the adversary proceeding, PMC sought a determination that Petroleum Enhancer's claim should be disallowed under 11 U.S.C. § 502(b)(1) or subordinated under § 510(c).  Generally, PMC alleges that Petroleum Enhancer, through Socia, Hill, MacKenzie, Nelson, and Coy-DeJongh, and the use of inside information, planned to strip PMC of its assets by taking control of the Affiliated debt and related security interest under the guise of a Uniform Commercial Code Article 9 sale of the collateral.  PMC's first claim for relief, under § 502(b)(1), alleges that PMC is entitled to set off against Petroleum Enhancer's claim for the damages that PMC as suffered as a result of "the improper actions" of Petroleum Enhancer and its principals.  In its second claim for relief, under § 510(c), PMC alleges that Petroleum Enhancer is an insider of PMC and engaged in inequitable conduct that was a breach of the fiduciary duties of the principals of Petroleum Enhancer to PMC and its creditors.

On January 12, 2009, the Colorado bankruptcy court granted Petroleum Enhancer's motion

to transfer the adversary proceeding to this Court, where it has been assigned case number 09-10247. The adversary proceeding was automatically transferred to the bankruptcy court in the Northern Division of the Eastern District of Michigan, pursuant to E.D. Mich. LR 83.50(a). On February 13, 2009, Petroleum filed a motion to withdraw reference of adversary proceeding to the United States Bankruptcy Court, contending that the factual allegations in the adversary proceeding are similar to the claims of PMC against Petroleum Enhancer and others as alleged in the Polar companies' counter-complaint and third-party complaint filed with this Court on November 19, 2007. In granting Petroleum Enhancer's motion, the Court emphasized that PMC's response did not dispute the similarity of facts and claims between the adversary proceeding and case number 07-12425. The Court also consolidated the cases through the close of discovery, set for September 28, 2009. See [Dkt. # 82].

On July 23, 2009, PMC's Chapter 11 case was converted to a Chapter 7 liquidation. (Petroleum Br. in Supp. of Mot. for Summ. J. Ex. D.) On July 28, 2009, the bankruptcy court in Colorado granted Petroleum's motion for relief from the automatic stay, allowing Petroleum "to exercise all of the rights and remedies against its collateral, including, without limitation, completion of the foreclosure sale of the Debtor's [PMC's] intellectual property and any other property of the Debtor in which Petroleum Enhancer, LLC owns or possesses a lien or security interest." (Petroleum Br. in Supp. of Mot. for Summ. J. Ex. C.) Petroleum filed its third motion to proceed with foreclosure and the proposed procedure for sale on August 6, 2009, which was later withdrawn [Dkt. # 83]. However, on September 10, 2009, the Polar companies filed an "emergency motion for temporary restraining order . . . regarding Petroleum Enhancer's attempt to sell collateral on . . . September 15, 2009" which could not be addressed by the Court before the sale. *See* [Dkt. # 89].

-9-

A sale of the collateral took place on September 15, 2009 with Petroleum Enhancer as the sole bidder with a prevailing bid of $1.85 million.   PMC did not challenge the commercial reasonableness of the sale or the sale price of the collateral.

## II

A motion for summary judgment should be granted if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).  The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  A fact is "material" if its resolution affects the outcome of the case. *Lenning v. Comm'l Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001).  "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000).  An issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics and Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (quoting Anderson, 477 U.S. at 248).  When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Mich. Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002).

The party bringing the summary judgment motion has the initial burden of informing the court of the basis for its motion and identifying portions of the record which demonstrate the

absence of a genuine dispute over material facts.  *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002).  The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).  A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252. The party who bears the burden of proof must present a jury question as to each element of the claim, *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000), rather than raise only "metaphysical doubt as to the material facts.*"  Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes.  *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991).

## III

### A

The Petroleum Parties first argue that PMHC's allegation that they interfered with the IBK financing arrangements is a fabrication. In support of this, the Petroleum Parties emphasize the deposition testimony of Hill and Socia, who testified that they had never spoke or otherwise corresponded with anyone at IBK. Hill and Socia's assertion is corroborated by White's deposition testimony that he had not been contacted by either Hill or Socia, had not received any documents from Hill or Socia. White also testified that he never stated that communications made by someone

representing themselves as a director of PMHC was one of the reasons that the IBK decided to terminate the PMC relationship. White further testified that it was unlikely that he was contacted by Nelson in June 2008 to provide testimony in support of PMHC's case because he had a business practice of making a record or notes of the conversation and would have then contacted his attorneys but nothing in IBK's files reflect receiving a call from Nelson in 2008. The Petroleum Parties argue that the unrebutted testimony demonstrates that neither Hill nor Socia contacted IBK and that IBK's decision to terminate the PMC financing was based exclusively on its review of PMC's and PMHC's financial documents. The Petroleum Parties further contend that Nelson's accusations that Socia, MacKenzie, and Hill were "torpedoing" the IBK financing was undertaken in order to continue his "ruse" with PMC and PMHC creditors and investors that the reason the company was failing and debts remained unpaid was because of the wrongful conduct of third parties.

PMHC responds by simply asserting that they have stated a claim for tortious interference with a business transaction resulting from the Petroleum Parties' interference with the IBK financing.  To establish a tortious interference claim, a party must show the existence of a valid business relationship, the alleged interferor's knowledge of the relationship, an intentional interference by the alleged interferor that causes or induces a termination of the relationship, and resultant damage to the Plaintiff. *Mino v. Clio Sch. Dist.*, 255 Mich. App. 60, 78 (2003). In response to the Petroleum Parties' motion for summary judgment on this claim, PMHC discussed facts that they believe relate to the breach of fiduciary duty resulting from Socia's approaching Becker, as President of Affiliated, in order to suggest foreclosing on the defaulted PMC loan.  PMHC does not, however, even discuss the IBK financing in its response to the Petroleum Parties' motion for summary judgment on the tortious interference claim.

-12-

Based on the unrebutted facts and the applicable elements for tortious interference claim, there is no evidence of intentional interference by the Petroleum Parties with the proposed IBK financing to sustain a tortious interference claim. As a result, the claims against Petroleum Enhancer, Affiliated, Socia, Hill, A. Richard Nelson and Becker for tortious interference with the IBK financing will be **DISMISSED**.

**B**

Second, the Petroleum Parties contend that PMHC lacks standing to assert claims arising from the alleged disclosure of confidential information and interference with potential PMC customers. In its January 5, 2010 order, the Court concluded that PMHC's claims must be "based on a breach of primary duty to PMHC, with a resultant injury to PMHC that is not derived from a breach of duty with a resultant injury to PMC that could be recovered by the trustee if he or she decides to pursue a cause of action." According to the Petroleum Parties, PMHC has merely reasserted claims in its amended complaint that are suggested causes of action of PMC.

In its response to the Petroleum Parties' motion for summary judgment, PMHC emphasizes that it has provided evidence establishing that Socia purposefully and intentionally deprived PMHC of an opportunity to obtain the patents and intellectual property through the foreclosure proceedings. To support this contention, PMHC argues that but for Socia's suggestion to foreclose on PMHC's defaulted loan, Becker and Affiliated would not, at any time, have done so. PMHC advances no evidence for this contention. PMHC further asserts that at the time of the foreclosure sale, it only had $25,000, and was therefore outbid by Petroleum Enhancer which was able to make a credit bid up to $1.85 million, representing the amount of the unpaid loan. However, at a sale of collateral, the highest bid is to prevail in order to protect the borrower, in this case PMC, as well as the

-13-

creditors.

PMHC claims its lack of resources resulted in its "losing an opportunity" to obtain the collateral at foreclosure sale. PMHC claims that it has standing to bring a claim for this lost opportunity because Socia was a board member of PMHC though not of PMC. As a result, PMHC argues that it lost its right to pursue an opportunity to obtain direct ownership of the property sold at auction and that its claim is a separate and distinct claim from the claim that PMC may have against the Petroleum Parties. In making this assertion, PMHC does not provide any factual support for its contention that Becker would have left the PMC loan perpetually in default and does not explain how this contention is legally significant to PMHC's claim for a lost opportunity to obtain the collateral. PMHC also does not provide any legal authority to support the suggestion that a cause of action exists for the lost opportunity to bid for the collateral when the procedures employed during the collateral sale were established to protect PMC as the borrower.

However, the amended complaint asserts that Socia and Hill contacted "Plaintiffs" prospective customers to convince them not to do business with PMHC, which resulted in millions of dollars in lost revenue because of the Petroleum Parties' wrongful interference with PMHC's business transactions with potential customers. This Court has already concluded that these causes of action belong to PMC and are under the control and direction of the trustee of the United States Bankruptcy Court for the District of Colorado. As stated in this Court's prior order, any potential claim relating to the alleged disclosure of confidential information related to the intellectual property previously owned by PMC are claims that belong to PMC.

Because PMC is a separate entity that was harmed by Petroleum Enhancer's alleged misconduct, PMHC's civil conspiracy claim will be **DISMISSED**.

-14-

## C

Even if a legitimate question existed about the Petroleum Parties' communication with IBK, the Petroleum Parties contend that PMHC has not established that any of the Petroleum Parties owed PMHC any legal duty. A fiduciary relationship arises from the reposing of faith, confidence, and trust and the reliance of one upon the judgment and advise of another. *Vicencio v. Ramirez*, 211 Mich. App. 501, 208 (Ct. App. 1995). A fiduciary owes its principal a duty of good faith, loyalty, and avoidance of self-dealing. *Prentis Family Found., Inc. v. Barbara Ann Karmanos Cancer Inst.*, 266 Mich. App. 39 (Ct. App. 2005). Officers and directors owe a fiduciary duty to their corporation. *Camden v. Kaufman*, 240 Mich. App. 389 (Ct. App. 2000). As to the corporate defendants, the Petroleum Defendants emphasize that PMHC's complaint does not identify a cause of action against Affiliated or Petroleum Enhancer because the complaint contains no allegations that Affiliated or Petroleum Enhancer were involved with the alleged tortious interference or conspiracy. Additionally, PMHC's complaint does not allege that either corporate defendant was a fiduciary of PMHC.

PMHC, appearing to concede the question with respect to the corporate parties, responds that the individual defendants owed PMHC fiduciary duties because each were either controlling shareholders, insiders, and/or directors of PMHC. The Petroleum Parties contend that this is untrue. PMHC had 150,000,000 shares of common stock outstanding and 50,000,000 shares of preferred stock outstanding. Under Section 16 of the Securities and Exchange Act of 1934, 15 U.S.C. § 78(a) et seq., an "insider" is a person who directly or indirectly owns more than 10% of any class of equity of a registered issuer or a person who serves as the issuer's director or officer. None of the individual defendants own more than 10% of any class of equity of PMHC. Moreover, the only

-15-

individual defendant that was a director at any time was Socia, who the Petroleum Parties emphasize was constructively terminated as a director by Nelson in the fall of 2006–months prior to any alleged wrongful conduct.

## 1

Hill was hired by PMC as a consultant in January or February 2006, but did not serve as an officer or director of PMC or PMHC.  Nelson claims there may have been a written agreement setting forth the terms and scope of Hill's consulting agreement, but the agreement was not produced during discovery. Hill did not receive any compensation from PMC for his consulting services. Hill was, however, offered an option to purchase 2,000,000 shares of PMHC's stock at market value, which at that time was less than $.03 per share, but he declined the offer.  Hill's consulting services ended in the fall of 2006. Hill, as a nominal stockholder of PMHC, purchased shares of PMHC when the company was still listed on the open market. The Petroleum Parties contend that, contrary to PMHC's allegations, Hill was not at any time a fiduciary or an insider of PMC or PMHC. To this end, Hill was not "paid" 2,000,000 options to purchase PMHC's common stock, and he was not obligated to "secure a $5,000,000 financing for [PMHC] and to develop profitable revenues for [PMHC's] products in the trucking and truck stop industries" as alleged in the complaint (PMHC's Amended Complaint [Dkt. #102], ¶ 23). The Petroleum Parties contend that Hill is more properly categorized as a short term independent contractor for PMHC or PMC, that he was not a fiduciary of PMHC, and he does not fit the requirements to be classified as an insider.

Additionally, the Petroleum Parties allege that A. Richard Nelson has not served as an officer or board member of PMHC, is not an insider or a fiduciary of PMHC, and other than his entitlement to stock from PMHC there are no other written agreements between he and PMHC. Bruce Becker

is the owner of Affiliated, the original corporate secured creditor on the defaulted PMC loan, but Becker has not served as an employee, officer, or director of PMHC.  PMHC alleges that Becker owns 4,424,391 shares of PMHC stock; however this neither makes him a fiduciary nor an insider because he does not meet the threshold of holding more than 10% of a class of equity as required by Section 16 of the Securities and Exchange Act.

The Petroleum Parties argue that, based on the established facts, Hill and Becker cannot be found to have owed a fiduciary duty to PMHC. PMHC contends that, alternatively, there is evidence that Hill and Becker knowingly and purposefully assisted Socia in breaching his fiduciary duty to PMHC.  PMHC provides no legal support for its contention that Hill and Becker are legally responsible based on this theory when they did not directly owe a fiduciary duty to PMHC. Accordingly, there is no evidence that Hill, Becker, or A. Richard Nelson owed a fiduciary duty to PMHC.

**2**

Richard Socia was not employed by PMHC but served as PMHC's secretary beginning in July 2003. Other than loan agreements, there are no other contracts between PMHC and Socia. (Ex. G p. 45).  Socia is a shareholder of PMHC and was elected to the Board of Directors of PMHC in July 2003. Beginning in the fall of 2006, Nelson allegedly "ostracized" Socia as a board member and excluded him from participating in that capacity. Consistent with Socia's deposition testimony and the meeting minutes of the Board of Directors produced by PMHC, PMHC has no record of Socia's inclusion in the Board of Directors meetings for the time period between August 30, 2006, and January 26, 2007. (Def.s' Mot. for Summ. J. Ex. G at 68-72). Nelson testified that during the same time period spanning the "missing" board minutes, PMHC Board was engaged in business

activity. (*Id*. at 71).

Nelson acknowledged the following in his deposition: that Socia was excluded from the executive committee meeting that took place in October 2006; that Nelson excluded Socia from the Board meeting in December 2006 regarding the approval of the financing with IBK; that Nelson conducted meetings with other board members and advisors of PMHC in the fall of 2006 without Socia's presence; and that during a meeting of the Board of Directors that took place on January 26, 2007, Nelson, as the president of the board, moved for Socia's removal from his roles with PMHC, including his roles as an officer and board member.  At the January 26, 2007 board meeting, pursuant to a motion brought by Nelson, Nelson's live-in fiancé, Sharon Minnock, was appointed to replace Socia on the PMHC Board of Directors and Walter Fay was appointed to replace Socia as PMHC's secretary before Socia had officially resigned (Def.s' Mot. for Summ. J. Ex. G; Ex. J).

The Petroleum Parties contend that Socia was constructively terminated as a director in August 2006. In support of this, the Petroleum Parties cite *Legatski v. Bethany Forest Assoc., Inc.*, No. 03C-10-011-RFS, 2006 Del. Super. LEXIS 196 (Del. Sup. Ct. April 28, 2006), which provides, in relevant part, that a fiduciary relationship is where one person has a duty to act or give advice to another on matters falling within the scope of the relationship.  *Id.* at *2. A fiduciary relationship arises from the scope of the director's relationship with the company and his ability to act for or give advice to the company. *Id.* at *9-10. If a director is prohibited from acting, giving advice, or participating in the business of the company then the fiduciary relationship no longer exists. *See id.*

The Petroleum Parties also offer a case from Illinois to support their assertion that Socia was constructively terminated prior to forming Petroleum Enhancer and did not owe PMHC a fiduciary duty.  In *Voss Eng'g, Inc. v. Voss Indus., Inc.*, 124 Ill. App. 3d 632 (1985), a board member and

employee of Voss Engineering was terminated as an employee but did not resign as a director of the corporation until after he opened his own competing business. *Id.* at 634-35. When the former employer filed suit alleging breach of fiduciary duty, the appellate court affirmed the dismissal of the plaintiff's claims because the former director defendant owed no fiduciary despite the fact that he had not resigned. *Id.* at 637-38. The court reasoned that the former director "never performed directorial duties, attended any corporate meetings, or acted for plaintiff corporation in any capacity subsequent to his termination," and that the defendant was "effectively removed . . . prior to the time he began operating a competing corporation," owing no fiduciary duty to the plaintiff. *Id.*

Alternatively, PMHC alleges that Socia formed Petroleum Enhancer with the intent to compete directly with PMHC nearly a month before tendering his resignation as a director of PMHC. Socia also requested that Becker, as president of Affiliated, foreclose on the defaulted PMC loan, and these actions were not in the best interest of PMHC. On the contrary, PMHC contends that Socia's conduct was in direct breach of his fiduciary duty as a director of the corporation. Moreover, Socia did not tender notice of his resignation as a PMHC board member until April 18, 2007—almost a month after he had formed Petroleum Enhancer.

Although Socia was a PMHC stockholder, he was not a controlling stockholder or insider because he did not own the required shares under Section 16 of the Securities and Exchange Act.[1] Furthermore, Socia was effectively terminated as a director at the January 26, 2007 board meeting and thus owed no fiduciary duty to PMHC. Socia was excluded from meetings and business decisions and was replaced by Nelson's appointment of other individuals to his position on the Board of Directors and his position as PMHC's secretary in January 2007. This January 2007

---

[1]Socia owned 2,000,000 shares of stock plus 300,000 options to purchase.

replacement identifies the latest point in time when Socia was effectively terminated and relieved of his responsibilities, resulting in his no longer owing a fiduciary duty to PMHC. As a result, neither of the corporate defendants nor the other individual defendants owed fiduciary duties to PMHC, and PMHC's claim for breach of fiduciary duty will be **DISMISSED**.

## D

At the October 28, 2010 hearing, counsel for Petroleum Enhancer informed the Court that Petroleum Enhancer had acquired PMC's remaining claims from the Colorado Bankruptcy Court. Federal Rule of Civil Procedure 41(b) provides for involuntary dismissal for "failure of the plaintiff to prosecute" upon motion by the defendant. However, the Court has the inherent power to dismiss a claim sua sponte for failure to prosecute. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-32 (1962). At this juncture, PMC needs to show cause why the two causes of action remaining from the bankruptcy court should not be dismissed for failure to prosecute.

## IV

Accordingly, it is **ORDERED** that Plaintiff/Defendant/Counter-Defendant/Third-Party Defendants' motion for summary judgment [Dkt. # 117 (40)] is **GRANTED**.

It is further **ORDERED** that Polar Molecular Holding Corporation's claims are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Polar Molecular Corporation **SHOW CAUSE** in writing on or before January 31, 2011 why the case should not be dismissed without prejudice.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: January 14, 2011

-20-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 14, 2011

s/Tracy A. Jacobs
TRACY A. JACOBS